E. H. Ewing, Special" J.,
delivered the opinion of the court.
This is a case commenced in the circuit court of Lawrence county, and transferred' by change of venue, *278 to the circuit court of the county of Giles. It is in assumpsit against the defendants in error, who were also defendants below, for a balance, alleged to be due the plaintiff on account of a contract, or contracts with him, in regard to certain horses and stage coaches alleged to have been sold to defendants, or some of them, by plaintiff. The declaration has six counts, only one of which, however, it is necessary to notice.
This is the 5th, which is upon the special circumstances of the case. This count sets out, that plaintiff and said Gullet, in the year 1847, had contracted as partners, with the government of the United States, to carry the mail from Columbia to Bolivar, for three years, from the first of July of that year, for which they had given bond as mail contractors, that for this service they were to receive twenty-five hundred dollars a year; that toward the end of the year 1848, the plaintiff agreed with the defendant, Gullet, to sell him his interest in their stock of horses and coaches, for the price of thirty-three hundred dollars, one thousand dollars of which was to be paid in cash, and the residue in quarterly payments, out of the money to be received under the contract for carrying the mail; that the defendants, Price and Hough, at the same time, joining with said Gullet, gave to the plaintiff a. written guaranty, that the said Gullet should discharge his duties in carrying the mail, and that they would save plaintiff harmless, and free from all liability, to the government, on account of his bond.
To this declaration, the defendants pleaded non-as-sumpsit, and payment, and the cause having been tried at the October term of the circuit court of Giles, a *279 general verdict was rendered for all tbe defendants. After a motion for a new trial, wbieb was refused by tbe circuit judge, tbe cause was brought to this court, by appeal. . «
It is now insisted by tbe plaintiff in error, that be is entitled to a new trial,, upon several grounds. 1st. He alleges, that tbe proof in the cause shows clearly, and indeed in an overwhelming manner, that there was a partnership between the defendants in the purchase of the horses and coaches from him, that all of the defendants were jointly and equally liable to him, that there is no proof whatever of his having been paid, or of the defendants having been otherwise discharged, and that on this account, the verdict should be set aside, as to all the defendants.
'There is a count in the declaration against the defendants, as partners, and if the proof upon this point, were really, as urged, a new trial should perhaps be granted upon this part of the case. But upon examination of the testimony, we are of opinion that there is no such preponderance in the proof as to this point, if indeed, there be any preponderance at all, as to warrant the granting of a new trial.
Plaintiff insists, 2nd. That he should have a new trial, as to all the defendants, because the verdict is clearly wrong as to Gullet, and being wrong as to one, ■and the verdict being joint, it must be set aside as to all.
"We"have searched the record carefully to find proof to sustain the verdict as to Gullet, but do not find it. As to his liability, originally, there is no dispute, and there is really no proof to show that he had paid *280 more than one thousand dollars upon the contract; the price agreed to be paid haying been thirty-three hundred dollars \ nor does he appear to have been discharged in any other way. The references to the proof by defendants’ counsel, upon this subject of payment, hare been carefully examined, and though the matters referred to, seem to have been sufficient to confuse the minds of the jury, yet certainly, looked at soberly, they amount to no proof whatever of payment.
So far as Gullet is concerned, then, a new trial must undoubtedly be granted. Whether this would necessarily involve the granting of a new trial, as to the other defendants, it will not be necessary to enquire. Upon this question of payment by Gullet, there is a portion of the judge’s charge to the Jury, which might, perhaps, well bo questioned. It is that, in which he assumes that the sale by creditors of the firm of Chaf-fin & Gullet, of a portion of the property sold by Chaf-fin to Gullet, would entitle Gullet to a credit on the purchase money, for one half the amount of such sale. This would depend upon the state of the partnership accounts, and the credit could, perhaps, only be obtained in a court of equity.
3rd. It is insisted by plaintiff, that the circuit judge erred in the construction of the contract of the 4th .of December, 1848. It seems not to be disputed by defendants, that the contract between Chaffin and Gullet was, that Chaffin was to be paid for his property, one thousand dollars in cash, and the balance quarterly, by being permitted to receive from the government of the United States, its dues for carrying the mail. The contract with the government was in their joint name^ *281 either party might have called for payment, from time to time, but the terms of the contract of sale for a payment to him in property, transferred the right of Gullet in equity, to his partner, and thenceforward, Chaf-fin alone was to receive the avails of the government contract, until he was paid for his coaches and horses. Gullet undertakes to carry the mail, and thus to insure that Chaffin shall receive from the government, the sum allowed for the service.
At this point, Price and Hough intervene, and undertake that Gullet shall perform the services, and discharge the duties required by the Post Office Department of him, as a mail carrier, and that they will save harmless said Chaffin, &c.
To this intent, Price and Hough sign with Gullet, a written guaranty. In a little time, Gullet ceases to perform his duty as carrier; the government refuses to pay Chaffin and Gullet, and employs another person, at the same pay, to do the service. Price and Hough insist, that Chaffin has sustained no damage from the government, and that they have discharged their guaranty, by the action of the government in getting another person to carry the mail at the price stipulated with Gullet and Chaffin. True, Chaffin loses his money, but it is said, that this is not the proximate consequence of Gullet’s failure to carry the mail, and that such damage to Chaffin, is too remote, to be remedied by a suit upon the guaranty. And so the circuit judge instructed the jury, telling them that it was his duty and province to explain and give meaning to this written instrument. In explaining the guaranty, he tells them, that Price and Hougb are- only liable to the ex *282 tent of such, damages, as might be recovered of Chaffin, by the government, for failure to carry the mail, and not to any damages that Chaffin might sustain by failing to get pay for - his coaches and horses, under his contract with Gullet. This part of the judge’s charge has, at first, an appearance of correctness, and yet, when the circumstances are looked at, it becomes eminently fallacious.
It is true, as stated by his Honor, that parol evidence cannot be admitted to vary, alter, or explain the intentions of the parties, as expressed in a written instrument, yet, it is no less true, that application must be given to the contract, by the surrounding circumstances. See 1 Greenleaf, § 278, et seq. Story on Contracts, 691, and authorities cited. Now, what were the surrounding circumstances, to give application to this contract? What were the circumstances? Gullet had bought property of Chaffin, for which he was to pay one thousand dollars in cash, and twenty-three hundred dollars in quarterly payments of the government, on their mail contract; Chaffin will not deliver the property until he is paid the one thousand dollars, and secured in the balance. Price and Hough are cognizant of all these facts. Chaffin will be secnre, if Gullet shall discharge his duty to the government, by carrying the mail, but Chaffin will not be secure, if Gullet shall only procure this to be done, and at Chaffin’s expense, or by Chaffin losing what would have been their joint pay from the government. Suppose this proposition had been presented to all the parties at the time the guaranty was signed. Hough and Price are to guarantee, that the government contract shall be per *283 formed by Gullet, or by some other person, which other person is, in that case, to receive the pay from the government. Would Chaffin have accepted this? Would he, in effect, have deprived himself by contract, of the very money which he was struggling to secure.
So soon as the contract between the parties was complete, the fund which was to come from the government, was, so far as Gullet, and Price and Hough were concerned, assigned to Chaffin, and could, in no manner, be used by the defendants, to aid them in discharging their duties to the government. And yet, what is the effect of the judge’s charge, and the finding of the jury? It is to allow- this very fund, thus assigned, to be applied to the relief of the defendants, in carrying out the government contract. The rule of the Post Office Department was. this, that if a mail contractor failed to discharge his duties in carrying the mail, his pay was first to be suspended, and if this did not produce amendment, it was to be applied to procure other and more faithful, 'or more competent persons to carry the mail in his place. This was done in the case before us, Gullet, and Price and Hough soon failing to discharge their duties, the government applied to one Patrick, who did the services, and received the money which wotdd have come to Chaffin, had Gullet performed his duty.
Now, did Price and Hough, or Gullet, discharge the duties incumbent on them, and save Chaffin harmless? The government, indeed, brought no suit against Chaf-fin, and collected no damages of him in the usual course of law, yet, did it not, in effect, do the same thing. By a summary proceeding in rem, it impounds *284 the fund which would otherwise have gone to Chaffin, and procures' another to do those services which Gullet had1 failed to perform. Where is the substantial difference between this, and suing Ohaffin, getting money from him, and with it, hiring some one else? The government has his money in hand, and subjects it without process, and certainly damages him to the extent of the money thus taken.
Now, of what is this the consequence? It is the consequence of the failure of defendants to carry the mail. But it is said to be too remote a consequence. Now, it seems to us, that the connection between the two, is as direct and immediate, as that between work and pay.
For ready money paid him by A, B agrees to work for C, and binds himself to A to do so; 0 is willing to pay A, if B will work for him, and promises (to do so. B fails to work, C refuses to pay. Now is not C’s refusal to pay A, the direct consequence of B’s failure to work? Is not the connection immediate, and the dependency complete ? And does not A sustain damage precisely to the extent of B’s failure ?
It may be said that Hough and Price did not intend to become Gullet’s sureties, for the balance to be paid for the coaches and horses. This may be true, and this is the view that seems to have been in the mind of the circuit judge. They did, however, intend to become his sm’eties for the performance of his duties, as mail carrier, and to subject themselves to damages for his failure, and for such damages, they are sued in the 5th count of the declaration. If these dam *285 ages should be the means of paying Chaffin for his coaches and horses, certainly the application of the damages tó this purpose, is no objection to their recovery. Suppose we leave out of view, altogether, the coaches and horses, and take it that Chaffin, had paid Gullet cash, for the right to receive his pay from the government, and Price and Hough guarantee that Gullet pfrall do the work, which is the consideration of the government undertaking. Is not the government’s refusal to pay, the direct consequence of Gullet’s refusal to work, and the loss to Chaffin, proportionate.
Upon the whole, we are of opinion, that the charge of the judge was incorrect in the particular above mentioned, and that the plaintiff is entitled to a new trial as to all the defendants.
Let the judgment be reversed and the cause remanded.